IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-002234-NRN

K.S.,

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,[1]

Defendant.

---

**OPINION AND ORDER**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff K.S.[2] was not disabled for purposes of the Social Security Act. AR[3] 30. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #8.

---

[1] Martin O'Malley became the Commissioner of Social Security ("Commissioner") on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[3] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##10, and 10-1 through 10-9.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence. *See Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) ("If [plaintiff] is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence.").

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007).

If the correct legal standards were applied and substantial evidence supports the findings of the Commissioner, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Background

**I.   Procedural History**

Plaintiff filed claims for Disability Insurance Benefits and Supplemental Security Income Benefits on April 9, 2021, alleging a disability onset date of December 24, 2020, and alleging disabling conditions of cluster headaches, hip pain, ulcers on bladder, anxiety, nerve damage and pain, tightening in chest, skin sensitivity, back pain, numbness in arms, and an inability to sit or stand for long periods of time. AR 135, 144. Plaintiff's claims were initially denied on October 7, 2021, and denied again upon reconsideration on August 26, 2022. *Id.* at 142, 151, 178, 203. Plaintiff then requested a hearing by an ALJ, which was held on March 27, 2023. *Id.* at 37. Following the hearing, the ALJ denied Plaintiff's claims on April 20, 2023. *Id.* at 17–30. On May 16, 2023, Plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 281–83. The Appeals Council denied review on July 11, 2023. *Id.* at 1–6. Plaintiff then filed this case.

## II. The ALJ's April 20, 2023 Decision

At the second step of the Commissioner's five-step sequence for making determinations,[4] the ALJ found that Plaintiff had the severe impairments of "Degenerative Disc Disease of the Lumbar Spine with Radiculopathy/Status-Post Laminectomy and Discectomy . . . , Thoracic Outlet Syndrome, Brachial Plexus Disorder, Trochanteric Bursitis of the Right Hip, Migraine/Cluster/Cervicogenic Headaches, [and] Adjustment Disorder with Anxiety and Depressed Mood." AR 20. The ALJ also determined that Plaintiff had non-severe impairments including "Overweight," Fibroid Uterus, Interstitial Cystitis, and Tobacco Abuse Disorder, and non-medically determinable impairments of Cervicalgia/Neck Pain and Bladder Pain/Incontinence. *Id*.[5]

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR, Part 404, Subpart P, Appendix 1. AR 20–22. Regarding Plaintiff's mental impairments, in particular, the ALJ considered the "paragraph B" criteria, and determined that Plaintiff had moderate limitations in two areas: (1) understanding, remembering, or applying information, and (2) concentrating, persisting, or maintaining pace; and mild limitations in two areas: (1) interacting with others and (2)

---

[4] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

[5] Because Plaintiff does not argue that the ALJ's evaluation of Plaintiff's physical impairments and limitations is deficient, the Court does not discuss them further.

adapting and managing oneself. *Id.* at 20–21. Because he concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments, the ALJ then determined the Plaintiff's residual functional capacity ("RFC"). The RFC contained the following mental limitations:

> [C]laimant is limited to understanding, remembering, and carrying out simple and detailed but not complex instructions, making simple and detailed but not complex work-related decisions, dealing with changes consistent with a simple and detailed but not complex work setting, and maintaining concentration, persistence, and pace for at least two-hour intervals over a normal 8-hour workday, 40-hour workweek, with standard breaks.

*Id.* at 22.

In determining the Plaintiff's mental RFC, the ALJ considered Plaintiff's testimony regarding her mental health symptoms, including that she feels frustrated and sometimes isolates herself. *Id.* at 23.

The ALJ also considered Plaintiff's medical record regarding her mental impairments. While the ALJ noted that a September 2021 psychological consultative exam resulted in an assessment of an adjustment disorder with anxiety and depressed mood, and a mental status exam was "largely normal with evidence of no more than moderate limitations in mental functioning," *id.* at 26, he also noted Plaintiff's consistently normal mental status exams in January, April, June, July, and September 2021; and February, March, and April 2022. *Id.* at 23–27. The examinations further showed that Plaintiff was alert and oriented, cooperative, and had normal mood and affect (January 2021); cooperative with normal mood and affect (April 2021); alert and oriented to person, place, and time, and had normal insight, judgment, mood, and affect (July 2021); awake and oriented to person, place, and time; had a normal affect, "fund

5

of knowledge was appropriate," recent and remote memory were intact, and had normal attention span, concentration, and language function (March 2022). *Id.*

The ALJ found that Plaintiff's activities of daily living were consistent with the above RFC. *Id.* at 27. These activities included preparing her granddaughter for school and sometimes driving her to school two blocks away, taking a bath, doing some household chores such as sweeping, dishes, cooking, laundry, cleaning, ordering groceries, and picking up after the dog. *Id.* The ALJ also noted that Plaintiff watches television, studies theology videos on YouTube, and tries to advocate for child sex-trafficking victims on the phone approximately weekly. *Id.*

The ALJ also considered three medical opinions regarding Plaintiff's mental impairments, including (a) the "more persuasive" medical opinion of state agency psychological consultant Mark Suyeishi, PsyD, who found that Plaintiff had moderate limitations in understanding, remembering, and applying information, and concentrating, persisting, and maintaining pace, resulting in "essentially semi-skilled work," (b) the "less persuasive" opinion of state agency psychological consultant Dara Goosby, PsyD, who found "moderate limitations in the B criteria and vague limitations (but at least unskilled)," and (c) the "generally persuasive" opinion of psychological consultative examiner Russell Thye, PhD, who found "none, mild-moderate limitations." *Id.* at 28.

At step four, the ALJ found that Plaintiff had past relevant work as a massage therapist, and a composite job of massage therapist and office helper. *Id.* at 29; *see also* Social Security Program Operations Manual System ("POMS") DI 25005.020 ("The claimant's [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the

6

claimant."). Given Plaintiff's RFC, the VE testified that these jobs could not be performed, and the ALJ then determined that Plaintiff was unable to perform her past relevant work as actually or generally performed. *Id.* The VE testified that someone with the same vocational profile and limitations as Plaintiff could perform the job of electronics worker, printed circuit board pre-assembler, or food and beverage order clerk. *Id.* at 30. The ALJ found that Plaintiff was able to perform other work that exists in significant numbers in the national economy, and, accordingly, determined that Plaintiff was not disabled. *Id*.

## **Analysis**

Plaintiff argues that although the ALJ found at step three that Plaintiff had moderate limitations in concentration, persistence, and pace, (a) the RFC determination does not contain a limitation which corresponds to this moderate mental impairment, and (b) the ALJ does not adequately explain the absence of such a corresponding RFC limitation, as he was obligated to do after declining to include such a limitation. Dkt. #11 at 10.

At step three, the ALJ found that Plaintiff had moderate limitations in two of the four "paragraph B" criteria: (1) understanding, remembering, or applying information, and (2) concentrating, persisting, or maintaining pace. These limitations "are not an RFC assessment but are used to rate the severity of mental impairment(s)," and "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C." SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996). The ALJ was not automatically required to incorporate these moderate

mental limitations into Plaintiff's RFC. *See Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in [claimant's] RFC based solely on his finding that she had "moderate difficulties" in social functioning as part of the distinct step-three analysis."). However, "having assessed certain mental limitations at steps two and three, the ALJ is 'required either to include corresponding limitations in the RFC assessment or to explain the omission.'" *D.G. v. Kijakazi*, No. 21-cv-01655-NYW, 2022 WL 2666033, at *8 (D. Colo. July 11, 2022) (citations omitted); *Crowder v. Colvin*, 561 F. App'x 740, 745 (10th Cir. 2014) (remanding case and holding that "[i]f the ALJ again chooses to assess moderate impairments in concentration, persistence, and pace at step three, but not to include any limitation on concentration, persistence, and pace in the RFC at step four, he should explain the basis for his decision"); *Miranda v. Barnhart*, 205 F. App'x 638, 643 (10th Cir. 2005) (finding error where ALJ "did not further mention concentration, persistence, and pace," in the RFC or elsewhere, after finding a moderate limitation in this area). Accordingly, the Court must first determine whether the RFC in this case contains limitations corresponding to the moderate limitation that the ALJ assessed in Plaintiff's concentration, persistence, and pace. If not, the Court then determines whether the ALJ adequately explained the omission.

I. **Whether the RFC Contains a Limitation Corresponding to Plaintiff's Moderate Paragraph B Limitation on Maintaining Concentration, Persistence, and Pace**

   a. **The RFC Limitation to Unskilled Work**

   The parties do not dispute that Plaintiff's RFC includes a limitation which corresponds to Plaintiff's moderate limitation in understanding, remembering, or applying information: "claimant is limited to understanding, remembering, and carrying

8

out simple and detailed but not complex instructions, making simple and detailed but not complex work-related decisions, dealing with changes consistent with a simple and detailed but not complex work setting." Dkt. #11 at 15. The Court will refer to this particular portion of the RFC as a limitation to "unskilled work." *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) ("Unskilled work generally requires only the following: (1) '[u]nderstanding, remembering, and carrying out simple instructions'; (2) '[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions'; (3) '[r]esponding appropriately to supervision, co-workers and usual work situations'; and (4) '[d]ealing with changes in a routine work setting.'") (quoting SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996)); *see also Lager v. Comm'r*, No. 22-4116, 2023 WL 6307490, at *2 n.1 (10th Cir. Sept. 28, 2023) ("simple" and "unskilled" work are essentially equivalent). However, the parties dispute whether this RFC limitation to unskilled work is a limitation which also corresponds to Plaintiff's moderate mental limitation in concentration, persistence, and pace.

Plaintiff argues that this RFC limitation to unskilled work does not account for her moderate mental limitation in concentration, persistence, and pace. Plaintiff cites examples of concentration, persistence, and pace provided in the POMS,[6] and argues

---

[6] "*Concentrate, persist, or maintain pace (paragraph B3)*. . . . refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples." POMS, DI 34001.032(E)(3).

9

that none of these areas are limited in Plaintiff's RFC. Dkt. #11 at 13. The Commissioner argues that the RFC's limitation to unskilled work "can reasonably account for a moderate limitation in concentrating, persisting, or maintaining pace." Dkt. #12 at 8.

The Tenth Circuit has firmly established in *Vigil* and other cases that an RFC limitation to unskilled work may adequately account for a step three moderate limitation in concentration, persistence, and pace. *See* 805 F.3d at 1204 ("[T]he ALJ accounted for [the claimant]'s moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work."); *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) ("[A]n [ALJ] can account for moderate limitations by limiting the claimant to particular kinds of work activity."); *Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016) (holding that simple work limitations are sometimes sufficient to address mental limitations); *Shelton v. Colvin*, 663 Fed. Appx. 690, 695 (10th Cir. 2016) (same).

However,

> *Vigil* does not stand for the broad proposition that a limitation to unskilled work adequately addresses all moderate limitations in concentration, persistence and pace, and does not establish than an ALJ may account for a claimant's limitations in completing normal workdays or workweeks, working with others without getting distracted, or perform at a consistent pace by limiting the claimant to "simple" work.

*D.G*, 2022 WL 2666033, at *11 (internal citation and quotation marks omitted). While an RFC limitation to simple or unskilled work may sometimes adequately account for a moderate mental limitation in concentration, persistence, and pace, this is only the case where the connection between the mental limitation and the RFC limitation is obvious, or the connection is explained in the ALJ's decision. *See Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019) ("Unless the connection (between the limitation and the

work) is obvious . . . the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion.") (citations omitted); *see also Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments.") (citations omitted).

This District has recognized that "functional limitations arising from a claimant's mental impairment will not necessarily be accommodated by a limitation to unskilled work," and "the outcome of [*Vigil* and *Smith*] depended on the existence of additional analysis narrowing or qualifying the moderate functional limitations identified at step three such that there was no inconsistency between the step three findings and the RFC ultimately assessed." *Valdez v. Saul*, No. 17-cv-02610-PAB, 2020 WL 2832372, at *4–5 (D. Colo. June 1, 2020)).[7] In *Richards* and *Shelton,* the Tenth Circuit upheld the ALJ's decision because the claimant failed to explain why the RFC limitation to unskilled work did not adequately account for the moderate limitation in concentration, persistence, and pace. *Richards*, 640 F. App'x at 790 (Plaintiff does not "explain why, consistent with our reasoning in *Vigil*, her RFC's limitation regarding simple instructions and simple work-related decisions do not adequately address her problems with

---

[7] In particular, the ALJ in *Vigil* explicitly reasoned at step four that although there was some evidence that claimant's moderate limitation in concentration, persistence, and pace prevented him from performing complex tasks, ultimately his "normal ability to recall items on immediate recall, and an ability to spell words forward, as well as finding of normal thought processes, indicate[d] that [claimant] retain[ed] enough memory and concentration to perform at least simple tasks." *Vigil*, 805 F.3d at 1203–04. And in *Smith*, although a doctor's answer to a question on a form indicated that claimant had a moderate limitation in concentration, persistence, and pace, the doctor was instructed that the questions were only an aid to assess the claimant's capacity, and the doctor ultimately concluded that the claimant could not engage in face-to-face conduct with the public, and could engage only in simple, repetitive, and routine tasks—both limitations which the ALJ incorporated. *Smith*, 821 F.3d at 1268–69, 1268 n.1.

concentration, persistence, and pace"); *Shelton*, 663 F. App'x at 695 (same). In general, an ALJ "must account for moderate limitations 'with precision in the ultimate determination of the claimant's residual functional capacity.'" *Spencer v. Kijakazi*, No. 20-cv-00786-NYW, 2021 WL 4133920, at *5 (D. Colo. Sept. 10, 2021) (quoting *Warren v. Colvin*, 170 F. Supp. 3d 1360, 1364-65 (D. Colo. 2016)).

In this case, after finding a moderate limitation in concentration, persistence, and pace at step three, the ALJ explicitly discussed Plaintiff's concentration, persistence, and pace abilities in the RFC discussion as follows: (1) Plaintiff's attention span and concentration appeared normal at a March 2022 mental status exam, and (2) Dr. Suyeishi's opined that Plaintiff had a moderate limitation in understanding, remembering, and applying information, and concentrating, persisting, and maintaining pace, "resulting in essentially semi-skilled work," which the ALJ found "more persuasive." AR 27, 28. Additionally, while not explicitly mentioning Plaintiff's abilities in the areas of concentration, persistence, and pace, the ALJ noted Plaintiff's numerous normal mental examinations in January, April, June, July, and September 2021, and February, March, and April 2022. *Id.* at 23–27. Additionally, many of Plaintiff's mental status exams in 2022 note in particular that "[a]ttention and concentration span appear normal." AR 682, 790, 799, 815, 520.

The Court finds that the ALJ's explanation adequately connects Plaintiff's moderate mental limitation in concentration, persistence, and pace with the unskilled work limitation in the RFC. *See Parker*, 772 F. App'x at 616. The ALJ found Dr. Suyeishi's opinion persuasive, and briefly explained that Plaintiff's two moderate mental limitations "result[ed] in essentially semi-skilled work." After finding Plaintiff's two

moderate mental limitations, Dr. Suyeishi's opinion also states that although Plaintiff is "moderately limited" in her ability to carry out detailed instructions and maintain attention and concentration for extended periods, she is "not significantly limited" in, among other areas, her ability to carry out very short and simple instructions, make simple work-related decisions, and perform at a consistent pace. AR 138, 141.

Plaintiff does not point to, and the Court has not located, additional evidence in the AR regarding Plaintiff's concentration, persistence, and pace that the ALJ failed to consider. Therefore, unlike in *D.G.*, the ALJ in this case appears to have considered and described relevant facts in the record regarding Plaintiff's moderate mental limitations in concentration, persistence, and pace, and understanding, remembering, and applying information, and reconciled them into the RFC. *C.f. D.G.*, 2022 WL 2666033, at *12. Given all of the above, the Court finds that the ALJ's discussion provides "additional analysis narrowing or qualifying the moderate functional limitations identified at step three such that there was no inconsistency between the step three findings and the RFC ultimately assessed." *Valdez*, 2020 WL 2832372, at *5.

   b. **The RFC Limitation of "Maintaining Concentration, Persistence, and Pace for at Least Two-Hour Intervals over a Normal 8-Hour Workday, 40-Hour Workweek, with Standard Breaks"**

After the unskilled work limitation, the RFC limited Plaintiff to "maintaining concentration, persistence, and pace for at least two-hour intervals over a normal 8-hour workday, 40-hour workweek, with standard breaks." The Commissioner argues that this—in addition to the limitation to unskilled work—is another limitation corresponding to the mental limitation in concentration, persistence, and pace. Dkt. #12 at 10. Plaintiff argues that this is not a true limitation because SSR 96-9p defines "RFC"

13

as "the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule," and "understanding, carrying out, and remembering simple instructions"—the limitation in the preceding clause of the RFC—itself requires "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." Dkt. #11 at 15 (quoting POMS, DI 25020.010(B)(2).

Plaintiff's arguments are unavailing. Plaintiff posits that this "RFC describes an individual who is not limited, but rather someone who is capable of carrying out the basic mental abilities needed for any job." But these clauses do not logically follow one another. If someone has the basic mental abilities needed for *any job*, it does not mean that they have the abilities necessary for *all jobs*. For example, some jobs presumably require an employee to concentrate for more than two hours at a time, or require employees to take non-standard breaks. Plaintiff would not be eligible for those jobs given her RFC. Plaintiff fails to explain why this is not a limitation in the area of concentration, persistence, and pace. Accordingly, separate from the limitation to unskilled work, the RFC limits Plaintiff's ability to maintain concentration, persistence, and pace.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 3rd day of May, 2024.　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　　*N. Reid Neureiter* (signature)

　　　　　　　　　　　　　　　　　　　　　　　N. Reid Neureiter
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge